Soraya Maria Rigor, In Forma Pauperis
P. O. Box 661473
Sacramento, CA, 95866
408-212-1691
Soraya.DataAnalyst@gmail.com



**FILED**

AUG 30 2021

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK



## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

Soraya Maria Rigor,
(successor/assigns/indwidual)
Plaintiff/Appellant,

Case #: 2:21-cv-01388 KJM AC

FIRST AMENDED COMPLAINT
FOR DAMAGES

v.

Dale Carlsen,
Mark Haney - Haney Biz,
Frank Bisek - CSUS employee,
Monique Brown - Haney Biz,
Jyoti Das - CSUS employee,
Edris Bemanian - COO Engage 3 (tech, ops, marketing, retail),
Brian Dombrowski - Fantag, Inc.,
Mitch Gardner - Founder & COO, Pocket Points (Startup/Product/Ops),
Brian Bedford - MBA/Juris Doctorate/CSUS employee,
Seung Bach - CSU Bakersfield employee currently/ formerly CSUS,
Haley Dillon-Meyers - CSUS employee,
Dam Mors - Founder and CEO of GEMINI LEGAL
Julian Vasquez-Helling - Educational Leadership and Policy Studies,
Josh Wolfson - Parrable (Product and Development),
Dan Mora - CSUS employee (leadership/business),
Mark - EZE Systems (Sales & Marketing),
Robert Nelsen - CSUS President,
Barry Broome - The Greater Sacramento Economic Council - Pres/CEO,
Dave Mering - CEO of MERING/CARSON,
Cheryl Beninga - Co-Founder of 'Fourth Wave' of Sacramento,
Mark Friedman - Founder and PResident of Fulcrum Property,
Kim Box - Gatekeeper Innovation (AKA: Safer Lock) - CEO,
Dave Lucchetti - Presiden/CEO of Pacific Coast Building Products,
Kevin Nagle - Chair/CEO of Sac Soccer & Entertainment Holdings, Inc..

Defendant/Respondent/Apellee.

Rule 20 Permissive Joinder of
Parties (Fed.Rules.Civ.Proc.)

## TABLE OF CONTENTS

**PAGE**

Memorandum of Points & Authorities ………………………………………… v

Jurisdiction ……………………………………………………………………… 6

Issues presented for review ……………………………………………… 6

Statement of the Case ……………………………………………………… 7

    a. Nature of the Case ……………………………………………… 7

    b. **FACTS** ……………………………………………………………… 9

<u>1</u> – Since my senior year of studies I have been paid to produce comprehensive consulting to generate returns on investment for stakeholders and owners which paid my way through college. Now, I do it to gain some lost credibility from loss of IP.

<u>2</u> – I am the first student at CSUS whose senior class public relations project (for Professor Nancy Kramer – MKTG-123, Spring 2016, nkinkaid@csus.edu ) has been misused for self-dealing from a breach by Sister Libby Fernandez, then Director of Loaves & Fishes, a Sacramento nonprofit that claims to help the homeless, but actually perpetuates it by giving free items that supplement addictions not addressed or cared for, creating more mental health and other health-related issues. Yvonne

i

Harris, CSUS executive, assigned Cota to walk me through the Pro-Se for that breach, at the Carlsen Center.

<u>3</u> – Jyoti Das and Frank Bisek sent mass-emails about registration, day-to-day performance requirements to meet the project's maximum value-added propositions from development and variation from researching the target segment and industry.

Students: Nishay Gordon Shay_smiles@hotmail.com; Natalie Harris nh739@csus.edu; Roger A. Fleenor rogerfleenor@csus.edu; Haley Dillon-Meyer haley.meyers@csus.edu; doe student1 ruiz2991@gmail.com, Candace Michaela Collins cmcollins@csus.edu; Kamal Alex Hibbler kamalhibbler@csus.edu; Brittany Yve St Lauren LeBlue byl28@csus.edu; doe student2 jasonc.doan@gmail.com; Jude Lorenz Mendoza Soriano judelorenzsoriano@csus.edu; doe student3, d@collaborativeinsruction.com; doe student4 meganz95@gmail.com; doe student5 writepike@gmail.com; Soraya Rigor Rigor@csus.edu; Thoa Nguyen thoanguyen@csus.edu; doe student6 maiquelmuro@gmail.com; Samantha Ilene Boyce ileneboyce@csus.edu; Amy Olivia Quinones amyquinones@csus.edu; Noor Moein Mashal noormashal@csus.edu; and sent by Jyoti Das jyoti.das@csus.edu (https://www.linkedin.com/in/jyotidas1/ ) sent in a mass email on June 25th,

2018, at 7:43pm mass email to "Elevate Boot Camp Participants" and mentioning that he was "excited to have us all in the very first edition of Elevate at Sac State."

<u>4</u> - Email affirms that on day 1 workshop was to include value proposition, customer segment, and assessment pitch. Sabya Das was to be the mentor of the day and Robert Nelsen was to visit to "hear about our progress". Event held in the AIRC room 1011 after registration in library room 1000 inside the GLOBAL LOUNGE in the main breezeway of CSUS, and acceptance into the Center's first and premier "experiential Elevate Boot Camp" involving 4-minute presentations and 5-minute Q&A per round.

<u>5</u> - Day 2 was Aaron Anderson, Barbara DeHart, Rob White, and Sabya Das who each generously provided time and feedback to all of us.

<u>6</u> - Day 3 we were presented "Mentors on our Behalf" other "mentors" and venture capitalists from SVP and Moneta Investments, Daryl Thomas, Jim Speriazza, Manvir Sandhu, and Stefan Ganchev, Steve McKay, and Rovert Nelson. We pitched a total of 7 times per requirements of participating to increase value propositions with Kathrine Cota and including VIP parking passes for the entire day, both of which were available upon request.



**7** – Day 4 & 5 involved performing final pitch presentation to Governing advisory board members by had by then, heard it 7 times throughout the event, and each 5 min minimum (timed).

**8** – False ownership invalidated the credibility students need to assure securing a good job upon graduating.

**8** – Public corruption ensued. Intended Beneficiaries; the students, lost out.

**9** – Misuse of power resulted in public corruption and loss of IP (rights to it)

Successive Variations of Intellectual Property…………………………….. 12

Course of Proceedings in District Court …………………………………. 17

SUMMARY OF ARGUMENT …………………………………………… 18

**ARGUMENT** ……………………………………………………………… 19

    I.    Standards of review for preliminary injunctions against future violations and for other pre-judgement asset freezes ………..

            1 – Injunction against future violations …………………

            2 – Asset freezes ………………………………………

    II.    Dale Carlsen, et al., colluded to commit fraud and violations in duty of care, my Civil Rights and my Constitutional rights of the 14th Amendment, negligence, and deceit……………………..

V

A. Dale Carlsen and the Governing Advisory Board Members listed as Defendant/Respondents employed a "deceptive device or contrivance" within the common law meaning and translations used by the Supreme Court in order to breach duties and thereby issuing a Photo Release of Ideas & Concepts to fraudulently gain ownership rights to student coursework IP, and is in direct violation of Constitutional rights, and in the duty of care from the special relationship between Universities and their students.

B. Conduct similar to Carlsen's is deemed fraudulent or deceptive under antifraud statutes.

C. Legislation and Supreme Court dictionaries confirm this.

Standards for Injunction against future violations ………………………….. 26

Asset Freeze ……………………………………………………………………… 28

Prayer and Remedy …………………………………………………………… 36

Conclusion ………………………………………………………………………… 39

Certificate of Compliance ……………………………………………………  40

Proof of Service …………………………………………………………………  41


vi

## MEMORANDUM OF POINTS AND AUTHORITIES

- YM Gadallah, LLC Int. Rev. Intell. Property Competition Law 41, 450-467, 2010.

- The Patent and Designs Act.Cap 90:03.

- The Trademark Act.Cap 90:01.

- The World Trade Organization TRIPS Agreement.

- World Intellectual Property Organization (WIPO), 2008, pg 17.Paragraph 2.1. (see: RECEIPT FOR COPYRIGHT paid in full) – provides 20 years protection in addition to rights of student coursework IP protections.

- Asahi Kasei Kogyo KK's Application [1991] RPC 485 (HL).

- Young v. Rosenthal (1884) 1 RPC 29, ref: Grove J said (at 31).

- World Intellectual Property Organization (WIPO), 2008, p. 17, paragraph 2.3 – statutory right to practice my invention and prevention of exploitation by others from using, making or selling my invention.

- Buckley LJ in Hickton's Patent Syndicate v. Patents and Machine Improvements Co. Ltd.. – cannot patent an idea, but my invention

consists of conceiving ideas that instruction on how to do a particular function of value that produces a new article or product.

- Blumenstyk, 2010; Farmer, 2007.

- Barrow, et al., 2014 – for accounting of facts and exhibits in support of Appellant/Plaintiff's claim for damages as a student-researcher and original author of coursework IP.

- Pilz, B.C., 2012 – says University policies for student IP should favor student-entrepreneurs to avoid issues like the ones mentioned in this claim for damages.

- Title IX of the Education Amendments of 1972 – Violation of civil rights.

- Chou v. University of Chicago No. 00-1317 (Fed.Cir. July 3, 2001) – advisors and University employees breached fiduciary duty of care to university students by blatant misuse and mishandling of student IP, so that Plaintiff/Appellant must pray for remedy so that proper ownership rights are returned to rightful and original authorship rights as well as ownership rights for invention as we were not employees of the Carlsen center for hire. This was mandatory coursework and project work that developed into competitive advantages to the CSUS through projects by students who conceived and developed ideas



and new business concepts in our private homes, dorms, or study
hall.

- Cannon v. University of Chicago, (1979), under TITLE IX – access to
justice.

- Pederson v. Louisiana State University (2000), under TITLE IX – to
challenge unequal educational opportunities of what the Carlsen
Center and Dale Carlsen offered to my counterparts; wire framework
for a mobile app, a position with the State Departments as an Analyst
even though not qualified for the position fairly, launch and then
added as a Google Play selection for mobile app purchase,
networking opportunities, and a job, like my counterparts Pinion and
Gordon received.

- Jackson v. Birmingham Board of Education (2005) – protection from
retaliation.

- Doe v. Anoka Hennepin School District (2012) – for gender-bias from
non-conformity to stereotype.

- Committee on Children's Television, Inc. v. General Foods Corp.
(1983) 35 Cal.App,3d 197, 216 and 217.) – for justifying fraud
provisions and where when fraud is proven through this complaint for
damages, it also shows that nobody had a meeting of the minds and

agreement for ownership rights to my work or other student IP (see: Id., 55 Cal.4th at p. 1182.) and upheld for 80 years.)).

- Holland vs. Jackson, 542 U.S. 649 (2004 allowing newly discovered evidence to support discussion and discovery.

- 18 U.S.C. 1346 for use with statutes in Public Corruption cases.

- United States v. Margiotta, 688 F.2d 108 [2d Cir.1982] – honest services required where failure to disclose a conflict of interest and the breach in duty of care, resulting in personal enrichment. All of which encompasses circumstances that led to alleged public corruption and where Dale Carlsen and the Governing advisory Board members had an express and/or implied duty to inform others of or be in direct violation of the law.

- Schmuck v. United States, 489 U.S. 705, 712 [1989] – 18 U.S.C. 1341 (Mail), 1343 (Wire).

- Hobbs Act – 18 U.S.C. Section 1951, where it is unlawful to allow commerce to be altered in any manner, by robbing someone of their personal property, or extorting it from them in any manner thereof. (see: United States v. Evans, 504 U.S. 255 [1992] includes conspiracy to commit the aforementioned where plaintiff is relieved, not by choice, of personal property.)



- United States v. Sawyer, 85 F.3d 713, 724 [1st Cir. 1966] – is for when the Advisory Board members by Dale Carlsen's direction, failed to disclose their personal interest in this complicated matter involving rightful ownership of student-created IP, therefore, motivation is also an "act" of motivating someone to breach duty of care.

- RICO ACT – Racketeer Influenced and Corrupt Organizations Act – 18 U.S.C. (1962);

- United States v. Turkette, 452 U.S. 576, 589 [1981], and section 1962 subdivisions (a), (b), (c), (d).

- RICO provides for forfeiture based on criminal acts of any interest obtained through violating my rights to my own property, and any money and/or assets obtained thereof from use of my property involving commercial use of my IP after presenting my work to Dale Carsen and the hand-selected advisory board members that colluded to cause injury to Plaintiff by overstepping use of my work without lawful permission to do so.

- H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239-240 [1989].

- United States v. Miss Valley Generating Co., 364 U.S. 520, 562 [1961] – shows that Dale Carlsen and Mark Haney's blatant misuse of student IP resulted in public corruption; misuse of a public position

of high authority for personal gain and other suspicions of violations and injustices to CSUS students.

- Henning, 92 Kentucky L.J. 75, 84 [2003] – where the constitution provides a clause in the prevention of corruption.

- The Constitution itself limits self-dealing and enrichment violations through the special relationship that the university has with its student body. (see: U.S. Constitution., art. II, Section 4).

- 18 U.S.C. section 666 – outlawing all instances of fraud and thefts (see generally: Sabri v. United States, 124 S. Ct. 1941[2004])

- Fed.Rules.Civ.Proc. Rule 60(b)2 – for corrections and oversights.

- Fed.Rules.Civ.Proc. Rule 59(b) – allowing newly discovered evidence not discovered in time for first attempt at filing this complaint, and in time for a new trial.

- Rule 59(b)3-6

- Equity Rule 72 – allowing correction in ownership, any licensing acquired through use of my IP, and any and all royalties due. (see: Mich Court Rules Ann (Searl, 1933).

- Fed.Rules.Civ.Proc. Rule 48;3

- 2 Wash Rev Stat Ann (Remmington, 1932) 464(3)

- WYO. Rev, Stat, Ann. (Courtright, 1931) 89-2301(3).



- Va.Code.Ann (Cichie, 1936) 6329, 6333.

- California Code of Civil Procedure (Deering, 1937) 473,

- N.Y.C.P.A. (1937) 108.

- 2 Minn. Stat. (Mason, 1927) 9283.

- Dobie, Federal Procedure pages 760-765 – for relief and independent action; compare 639; and Simpkins.

- Federal Practice Ch. CXXI pp.820-830 and Ch. CXXII (pp. 831-834), compare 214.

- Notes of Advisory Committee on Rules – 1946 Amendment.

- Subdivision (a) Pearlman vs. 322 West Seventy-Second Street Co., Inc.F.(2d) 716.

- Fed.Rule.Civ.Proc. Rule 8 and 10 – for ProSe litigants like myself who have not conferred a law degree and not formally trained in practicing law for legal argument, only walked through instruction of how to fill out a ProSe Packet of the Eastern District Court.

- **Jurisdiction**: See Title 28 U.S.C. 1331 et seq where first amended complaint, notice of appeal, and objection to magistrate's findings and recommendations published on August 10th, 2021, is timely filed on August 30th, 2021, at the Eastern District Court of California in Sacramento and a copy will be filed at the Appeals Court for the 9th



Circuit in San Francisco, California, on or around September 3rd, 2021

- **Claim is**: "plausible on its face" Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 678.

- Fed.Rules.Civ.Proc. Rule 38(b) – requesting relief entitlement.

- 3 Moore's Federal Practice (1938) 3276, permitting correction and leave of Appellate court after filing a notice of appeal and filed to the Eastern District Court on August 20th, 2021.

- Prop 41 (November 3rd, 1941) – Miscarriage of justice.

- Selangor United Rubber Estates Ltd. v. Cradock (no 3) 1.

- Penal Code Section 236.1 and (8) – serious harm caused to Appellant/Plaintiff includes psychological and inability to restful sleep is sufficiently serious enough for actionable cause and continuance to file a claim for damages.

- Rule 804 (b)(1) or (6) – hearsay exceptions if not able to get Respondents to court; See: Fed.Rule.Civ.Proc. 804(b)(2),(3), or (4); Rule 807, subdivision (b)(5); subdivision (b)(6), Rule 804 (b)(6).

- United States v. Mastrangelo, 693 F.2d 269 (2d Cir.1982), cert. denied, 467 U.S. 1204 (1984) – forfeiture by misconduct, see: e.g., United States v. Agular, 975 F.2d 45 (2d Cir. 1992);



XiV

- United States v. Balano, 618 F.2d 1346, 1358-59 8th Cir.), cert. denied 431 U.S. 914 (1977) – for preponderance of the exhibits provided as evidence in support of Appellant/Plaintiffs claim for damages.

- Contra United States v. THevis, 665 F.2d 616, 631 (5th Cir.);

- Gap Report on Rule 804 (b)(5);

- Gap Report on Rule 804 (b)(6) – for wrongdoing forfeiture.

- Wyatt v. State, 35 Ala. App. 147, 46 So. 2d 837 (1950);

- State v. Stewart, 8s5 Kan. 404, 11 6 P. 489 (1911);

- Annot., 45 A.L.R. ed 1354;

- Uniform Rule 62(7)(a);

- California Evidence Code 240(a)(1).

- HB 6 – Public corruption [31 Cal.3d 736]

- People v. Pic'l (1981) 114 Cal.App.3d 824 [171 Cal.Rptr. 281, 499 P.2d 961] (see: section 995 proceeding) – where favorable consideration in favor of indictment occurs.

- (see: People v. Hall (1971) 3 Cal.3d 922 [92 Cal.Rptr.304, 479 P.2d 664].)

- In re Mushroom Transp. Co., 382 F.3d, 325, 342 (3d Cir. 2004) to recover from the Defendant/Respondents on the grounds of the fraud



committed and the concealment of that fact thereof. And witnesses
can affirm the hand-shake deal implied in an agreement and
acceptance to perform the duties of the agreement provided by Jyoti
Das in instructions of the daily activities and desired performance
required to keep up with the demands of the coursework.

- Delaware Code Ann. Tit.8 Section 102(b)(7)

- Rubin Quinn Moss Heaney & Patterson, P.C. v. Kennel, 832 F. Supp.
  922, 935 (F., D. PA. 1993);

- Schwartz v. Pierucci, 60 B.R. 397, 403 (Bankr. E.D. Pa, 1986).

- Jernberg v. Mann, 358 F.3d 131, 135 (1st Cir. 2004) to show cause
  for action for the use of position of influence to cause injuries 29
  U.S.C. section 1105 (LEXIS 2005)(ERISA Provision that enunciates
  prohibited transactions by fiduciaries like Dale Carlsen, et al, with
  particulars about self-dealing in his own personal goals and interests
  or for his own personal account of achievement from that fraudulent
  act of gaining control over my personal property; my IP, at my
  expense and the expense of other CSU Students (see: Quoting
  Reigler v. Reigler, 553 S. W.2d 37, 40 (Ark. 1977), that "[i]n
  administering the trust, the trustee must act for the beneficiaries; he is
  prohibited from using the advantage of his position to gain any benefit

16

for himself at the expense of the beneficiaries and from placing

himself in any position where his self interest will, or may, conflict with

his duties." (Quoting Riegler v Riegler, 553 S. W.2d 37, 40 (Ark. 1977

- Cause for action from reliance on duty of care to university students
  and trust of those appointed university officials, resulted in injury to
  Plaintiff/Appellant (See: Strebel v. Brenlar Investments, Inc. (2006)
  135 Cal.App.4th 740, 752.). Quoting Cede & Co. v. Technicolor Inc.,
  634 A,2d 345, 361 (Del. 1991).

- Williams v. Wraxall (1995) 33 Cal.App.4th 120, 132);

- Leventhol, Kresktein, Horwath & Horwath v. Tuckman, 372 A.2d 168,
  169-70 (Del. 1976); Cole v. Laws, 76 S.W.3d 878, 883 (Ark. 2002);

- Sanford v. Sanford, 137 S.W.3d 391, 398 (Ark. 2003)(In discussion of
  position as a Trustee appointed and endorsed by the Trustee
  Secretariat for the CSU Sacramento University system and
  compliance to laws and policies set forth thereof.

- Somers v. Superior Court (1973) 32 Cal.App.3d 961, 963 [108
  Cal.Rptr. 630] – so the indictment will NOT be set aside when rational
  consideration of violations of offenses occurred and/or committed by
  Defendant/Respondents.

2

- Court of Appeal in People v. Glicksman (1978) 78 Cal.App.3d 343 [144 Cal.Rptr. 451, - forbidding bribery resulting in corruption of a governmental process such as a directed through university policy and policy of the Trustee Secretariat, and pursuant to Penal Code section 138 which is a felony to alter truth of any part of their testimony of truth of facts at hand and related to this claim for damages.

- People v. Weitzel (1927) 201 Cal. 116 [255 P. 792, 52 A.L.R. 811] Weitzel construed (31 Cal.3d 739] Penal Code Section 165 allowing public officials to be punished for their crimes involving bribery; including Penal Code Section 136 ½ forbidding offers involving bribes

- Public corruption cases – United States v. Miss. Valley Generating Co., 364 U.S. 520, 562, [1961]

- United States Constitutional clause that provides provisions for claims based on suspicious behaviors like that of Dale Carlsen and the Governing Advisory Board Members, all high officials whose activities led to corruption and malfeasance.

- Johnson v. People, 152 Colo. 586, 384 P.2d 454 (1963);

- Contra Pleau v. State, 255 Wis.362, 38 N.N.2d 496 (1949);

- McCormic 234, P.494;

- Uniform Rule 62 (7)(c) – inability to bring attendance to this matter.

- Under 28 U.S.C. Section 1332 – defamation, other personal injuries including emotional duress. My business model is the ONLY one not mentioned by name in all articles and content developed by CSUS employees in acclaim of the Carlsen Center's provisions to students who signed up to participate in the premier and "experiential" Elevate Boot Camp.

- Violation of the 4th Amendment to the U.S. Constitution and the incorporation of the Bill of Rights (1971) – where University officials act as agents of the state, not at all invested in their own personal gain.

- The 14th Amendment says nobody shall be relieved of their own personal property which includes intellectual property, and all rights associated with ownership thereof.

- See: 2011 decision in Board of Trustees of Leland Stanford Junior University v. Roche Molecular Systems, Inc. (Stanford v. Roche), where all principles of invention are owned by the inventors of that creation. (Affirmed by the U.S. Supreme Court in 2011 decision Stanford v. Roche; the Bayh-Doyle Act of 1980 does not apply here because the Carlsen center advisors wrongfully took ownership of my

IP causing an unfair disadvantage to me in terms of employment, credibility, prospective clients who would hire me for services rendered, and/or upward mobility from unemployed to employed.)

## CONCLUSION

- Carlsen and Haney created an atmosphere of corruption so that students lost out on ownership rights to their original authored works. Therefore, the governance role and its own financial and competitive interests deprived of their IP and exploited student work without providing payment or royalty income for that work. The self-dealing of the Governance Advisory Board of the Carlsen Center for Innovation and Entrepreneurship provided provisions for economic growth while failing to perceive or acknowledge the conflict that arises with respect to all other institutional responsibilities and commitments to students.

- There is a written agreement under the standard patent rights clause, to be required by universities of their personnel, which provides all student entrepreneurs participating in the events held by the Carlsen Center, a safe area for original authorship works where agreements were written and signed, and should have my signature to move forward with my IP without disregard for my performance of exceptional skill and strategic development of engagement

## <u>JURISDICTION</u>

The Eastern District Court Magistrate has granted permission to proceed In Forma Pauperis 'IFP' (See 28 U.S.C. Section 1915(a)(1)).

Plaintiff seeks permission for leave to file a First Amended Complaint to correct and cure all deficiencies of the original complaint, and any other attempted complaint detailing similar content, "Rigor I" and "Rigor II". I apologize to the court, and to the Magistrates assigned to this case, for any inconveniences.

Plaintiff seeks permission for right for leave to file a first Amended Complaint BEFORE a responsive pleading is served and filed. Plaintiff is filing within the allowed 21 day grace period, per Fed.Rules.Civ.Proc. 5(a) and (d)(amended eff 12/01/18), and proceeds with the same exhibits as proof and accuracy of quotable testimonies from Defendants.

## <u>ISSUES PRESENTED FOR CURE OF DEFICIENCIES</u>

1. ECF No.1at7; Id.at 7-15; 5ECF No.1at7 stem from current legal issues which have been addressed and are cured through filing a first amended complaint.(see; e.g., Weinberger v. Romero -Barcelo, 456 U.S. 305, 311-313, 102 S.Ct. 1798, 72 L.Ed. 2d 91 (1982));

2. Similar Case No. 2:19-cv-00633-KJM-AC is based on a recent discovery of new evidence. The preponderance of evidence are



articles, detailed in the 931 allowed pages of exhibits, and filed along with the original complaint. The articles show press releases, official advertising, archives, and newpapers, which help to alleviate any worry about hearsay. (see: Amoco Production Co. v Gambell, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1984)); "Rigor I" and "Rigor II" are both cured through the filing of this first amended complaint on August 30th, 2021 at the U.S. Eastern District Court. I formally apologize to the court and magistrates for all the time, effort put in, and for the inconveniences in this matter. Forgive me. Plaintiff seeks to right a wrongdoing done to CSUS students.

3. Res Judicata address – Plaintiff prays to proceed IFP and has vowed to have cured all deficiencies in any attempted and/or similar complaint, prior to this date. I vow that if allowed to proceed, I will practice my best effort to file ONLY valid claims, showing ONLY causable and actionable remedies. I will not waste your time. Plaintiff requests to move forward based on the preponderance of evidence filed as exhibits for this complaint.

## **STATEMENT OF THE CASE**

### **A. Nature of the Case:**

The Defendants listed individually, and known 'jointly' as the Governing Advisory Board Members of the Carlsen Center for Innovation and directed

by Dale Carlsen, are alleged to have committed fraud, violated the civil rights of trusting and unsuspecting CSUS Students, and as a direct result, lost opportunities for economic and professional prosperity from the loss of student coursework Intellectual Property that is rightfully protected by patent and copyright laws based on students have the freedom to innovate on a university campus due to the Duty of Care policies, constitutional rights to IP property that was authored and researched by student entrepreneurs, and the proceeds and benefits of those facts.

Carlsen appointed people to obtain material non-public and sensitive information involving value proposition and competitive advantages, and immediately exploited that information for the benefit of themselves and not the beneficiaries; the students who attended the premier opening of the Carlsen Center to the public, 'The Elevate Boot Camp.'

The 'Boot Camp' was a 40-hour, week-long intensive and comprehensive coursework plan was executed by Carlsen to have students develop pitch decks. Pre-registration to the event presented details of our business plans to the Carlsen Center. Upon acceptance, mass emails to all participants provided details in performance requirements on a daily basis, and extra time researching, planning, and executing 5 successful pitch sessions, with a Q & A, to all the people whom Dale Carlsen presented as "mentors."

*B*

Those mentors ultimately took control of all the IP provided at that event, and took the rewards of it, leaving students without the benefit of their IP that was produced and authored by students in a free workshop on the Cal State University Sacramento-CSUS campus in June of 2018.

## B. FACTS

The following statement of facts are based on the evidence introduced at the time of filing of this original complaint for damages, and have been filed, and are known as '931 pages of exhibits'. Exhibits include CSUS articles, articles from strategic partnerships, CSUS advertisers, CSUS social media postings, and testimonials from the Defendants listed in this complaint. Defendants have not filed a response.

1. **Jyoti Das and Frank Bisek mass-emailed participating students in June 2018 registration and agreement to perform the assignment and research required to present to investors and launch a business; meets students' goals for attending the detailed event; 'Elevate Boot Camp.'**

Dale Carlsen directed the activities of the Carlsen Center when it

began operations at the opening in June of 2018. Students were offered to apply and register to attend an event called, 'The Elevate Boot Camp'

which would allow student entrepreneurs to develop their business ideas and concepts into a viable launch and through the provisions and offerings and network provided by Dale Carlsen himself; a philanthropist and the university's "largest cash donor."

2. **The Carlsen Center representatives, Jyoti Das, Director of the Carlsen Center and Frank Bisek mass-emailed the entire group of student entrepreneurs so that registered to this agreement and acceptance of a performance to participate;**

The outcome and the hopes of achieving a viable launch if we could get to the end of the sessions where many Student entrepreneurs provided details in their practice pitch sessions about the various stages of development they were achieving each day and everyone was excited to maximize value to the selected target segments through their business. My business model was based on a homeless experience from losing my mom from cancer then my uncle stole the house. When my uncle evicted me and my tenant from the property I inherited, to stay safe in this unknown circumstance, I felt I had no choice but to sleep in the Academic Information Resource Center AIRC, which was mostly open 24/7 when campus was open, on the CSU Sacramento campus to sustain.

I tried to find resources (2017-2018) on campus; I found a small and limited food pantry that offered 2x per week visits, and a new emergency housing for 30 days in the campus dorms for homeless students. (EXHIBITS support this claim of existing resources, including information from the Office of the University President, and the Associated Students ASI, as well

Professors, many, had heard about me sleeping in the AIRC, and recommended me to be the first to use this system. My experience with the limited resources, and the huge amount of time I spent trying to find some crutch to hobble through to graduation. I decided I had no choice but to study 8 to 12 hours per day while everyone else was worried about deadlines. I did not want anyone to discover that I was suddenly homeless due to fraud, in my senior year of studies. I ate at soup kitchens in between classes to sustain because of the limited resources on campus.

3. **'Make Your Campus Matter' began as a senior class project from a personal experience in my senior year of studies; Homelessness as a CSUS student after uncle evicted me and my tenant, by taking the house mom gave to us when she died of cancer. I pivoted by turning a negative into a positive; helping underprivileged students and to make mom proud.**

Professor Stanley Han – ENTR 187 – provided an opportunity for

developing my initial ideas and concepts for 'Make Your Campus Matter'

which was called, 'Studential kickbacks; Toss Your Campus A Bone' as a

senior class group project for letter grade in Spring of 2017.  The idea was

in reference to giving an enrolled college student a meal instead of

donating to the University directly, not to compete, but to assist in building

donor pool(s) of new donors who did not want to give through the CSU

website at that time. I discovered only a small pool of money existed from

CSUS efforts to gain donor support from stakeholders and Alumni,

therefore, focused on Alumni giving strategies which aligned with the goals

and desires of the University president.

Plaintiff/Appellant has provided successive variations of the IP:

1) 'Studential kickbacks – I made it into a senior group project ENTR187

2) 'Angel Alumni' – idea I worked on at 'Elevate Boot Camp' with Cota.

3) 'Make Your Campus Matter' – student related (inclusion, acceptance,

the value of diversity, retiring Professionals giving back to their Alma Mater,

value propositions from basic community building blocks; give a meal or

textbook so someone else could imagine their own graduation. The value

of that level of support – for licensing agreements ONLY.

4) 'UNICONNECT' – 'StartupCSUS' event at Deloitte Consulting in April 2019 – this was a mobile app achieving and providing engagement opportunities for the CSUS campus. We pitched for licensing agreements here, too, as we were eager to get ahead in life. The AIRC Manager, Christine Miller exclaimed to us during the Q&A that she "didn't know why they hadn't thought of it first." (Flyer in Exhibits)

5) www.StudentsLivesMatter.org  (lost value from fraud by Carlsen)

Student goals and Elevate Boot Camp outcomes for students who participated matched as students intended to build value using the scholarly research learned in college studies. My studies involved consumer behaviors, corporate finance, using decision science and hypothesis testing to make statistical inferences using raw and secondary data sources. I know what credible sources are, and something went wrong for the student entrepreneurs who lost the rights to the IP developed and pitched to the Carlsen advisors and mentors who ultimately had control of activities and progressions in building the IP into becoming the "ANCHOR UNIVERSITY."

A university press release validates the agreement made by the

Carlsen Center to university students who participated in the Boot Camp and were being heralded in several newspaper articles because the objective, according to Carlsen, was to build business and help us launch by attending where we were required to put in our own work and revision requirements for something that investors would deem valuable enough to invest their money into. The wrong people were paid for that IP. What changes you see at the CSU Sacramento after 2018 pitch sessions is based on stolen student coursework IP where someone in a position of power used their influence to gain ownership through fraudulent events that resulted in unfortunate outcomes for original authors of that IP; the students of the CSU Sacramento university.

4. **The Outcomes in 2018 AFTER Dale Carlsen's actions led to ownership of Student work fraudulently obtained. Rewards and credibility of authorship from original IP were generated from student research, time analyzing the industry and local market, understanding of the consumer group(s) to maximize value of service, submitted for letter grade to Professor Stanley Han in Spring of 2017; a senior class project.**

After Cota quit from the fraud in May of 2019, 2019 development of CSUS university dynamics, outreach methods, strategies of development and

goals, completely matched 'Make Your Campus Matter' on the larger scales that I prayed for when I pitched and presented facts for the Q & A sessions with Carlsen's "Mentors." The fact is that the outcome shows that the CSU Sacramento has somehow allowed fraud and Misuse of student IP and have wrongfully taken the rewards of that effort from the rightful student-authors/owners of that IP, to become the "ANCHOR UNIVERSITY".

This indicates that the 'Make Your Campus Matter' and other student coursework IP obtained through fraud and the use of a 'Photo Release of Ideas & Concepts,' shows intent to disrupt and/or change the original agreement which was to bring successful students to launch. The advertising said Carlsen's intent was for the purpose of helping the community to perceive/believe that Dale Carlsen was bringing business to the Sacramento region (his personal goal) by bringing student entrepreneurs to launch new business in the region. Nowhere does it say that "the largest cash donor" was going to take everything I learned in college and have taken the years to research and develop into a viable and well-developed business venture, away from me and other students.

This missed reward took opportunities away from student entrepreneurs, it took needed credibility we need to get to the next level

after graduation, it took job opportunities away so that I am forced to file IFP, and I am not the only student affected by these injustices, but I may be one of the only student entrepreneurs who formally, through emails and social media posts, refused to sign that release because the wording in it stating that signing it would take my lunch money. This was just when students hopes and dreams of eating well began to be realized from producing stellar work. It was injurious to students of the CSUS campus and a violation of fraud and misuse of power in Duty of Care for safe activities on campus.

Students trusted that outcomes would benefit students, the beneficiaries, and not the philanthropist and largest cash donor who wrote the checks". All rewards and benefits should rightfully benefit student entrepreneurs and any and all rewards from these outcomes of events that unfolded.

Plaintiff is adding a permanent injunction to this first amended complaint to stop this type of injustice from happening again.

## C. COURSE OF THE PROCEEDINGS IN THE DISTRICT COURT

Plaintiff/Appellant is filing a First Amended complaint, an Injunction against future violations, a new summons with Proof of Service and list of

Defendant/Respondents, and an pre-judgement asset freeze request. All documents are filed on August 30th 2021, at the U.S. Eastern District Court in Sacramento, CA; and seeking to file a copy with the 9th circuit court.

Plaintiff is addressing all errors and curing deficiencies in the original and similar complaint attempts based on surprise discovery of new evidence. (see: Holland v. Jackson, 542 U.S. 649 (2004)); and Rule 33 of the Fed.Rules.Civ.Proc. says I have three years to produce the evidence which is provided and apparent in the preponderance of evidence for your convenience, as "931 pages of exhibits" filed with the original complaint.

Plaintiff/Appellant intends this to be a Notice of Appeal to, The 9th District Court Of The United States in San Francisco, CA, and is requesting leave to pursue that action. (see: eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126, S.Ct 1396, 94 L.Ed.2d 542 (1987));

The First Amended Complaint is accompanied by an emergency application for a temporary restraining order, an order freezing assets and granting other relief, and an order to show why a permanent injunction should be issued. (see: 26 N.Y. 2d 219 (2nd Cir., 1970); 15 U.S.C§ 1116 TRADEMARK

Plaintiff/Appellant seeks remedy from misrepresentation representing the alleged ill-gotten gains plus three times the amount of those gains to cover possible civil penalties (see: Defendant's financial statements and tax

returns to show gains to defendant/respondents, as well as the Honorary Degrees to Advisory Board members before and after the breach).

In the meantime, Plaintiff filed a First Amended Complaint and documents supporting the appropriateness of the preliminary and/or permanent injunction and asset freeze.

## SUMMARY OF THE ARGUMENT

This case presents the important issue regarding student coursework IP developed through University studies and the rights to ownership and rewards associated with regards to a University's Fiduciary Duty of Care to its students in campus activities, and where the fraud, misrepresentation, and deception occurred. (see: U.S. Constitution and Fed. Statutes Code 5 U.S.C. § 703)).

1. Plaintiff holds firm (see: Id. at 746-47; United States v. Johnson, 327, U.S. 106 (1946); and the Poor Man's Patent"; and damages to reputation and misled public truth of the matter at hand.

2. Breach of special relationship between a university and its students in terms of the level of duty of care that is required by law; Liability for failing to provide safe activities on campus and loss of rights to IP.

"Deception." based on the ordinary meaning of the term, includes any declaration, artifice or practice having the power to mislead, to cause to believe the false, or to believe the true, as by falsification, concealment, or cheating; an attempt to lead into error; a trick or a fraud. "Device or contrivance" includes any scheme to defraud. Carlsen pursued personal goals in the employment of contrivance and fraud to obtain valuable information and IP from student entrepreneurs – he caused the Advisory Board to take ownership and control of the use of how student IP would be implemented and developed upon for his own personal rewards and not to the benefit of students who created the IP. Carlsen and the colluding advisory board members caused the public to believe that they created what became to be known as the development for building the "Anchor , University" designs, and the rewards for those designs, without proper authorization to do so, by the rightful owners of that IP.

## ARGUEMENT

The sole ground given by the district court for denying a preliminary screening of previous and similar complaint attempts by Plaintiff/Appellant have been addressed and cured through this filing of a First Amended Complaint on August 30th, 2021. This involves a fiduciary or similar duty. This rule of law, if adopted generally by the courts, would work a revolution

in the antifraud provisions of the University Trustee Secretariat and the Department of Justice and the Educational provisions enacted for the safety and care of university students (that paid to learn) when performing activities on campus because it would mean that buyers and sellers, donors and those seeking higher education opportunities, would have be guaranteed the rewards of developing valuable IP through coursework, research, and while putting in the time for consumer engagement in a safe campus activity to the student body where the student beneficiaries come out as winners for their IP and the rewards that come with it which should NOT benefit the corrupt people like Dale Carlsen who ultimately caused public corruption to occur through all the promotions to executive and board positions, as well as through royalties and professional partnerships, as well as through public information mediums, portals, and platforms, and the many Honorary degrees handed out after the breach.

This would also mean that others could lie with impunity so long as they did not owe an existing duty to the barrage of the lies. An example of this occurred when I became the first student in the Spring term of 2016 to have had their senior class public relations project misused by a business leader. CSUS Professor Nancy Kramer nkincaid@csus.edu , coursework catalog MKTG-123, allowed us to meet with Sister Libby Fernandez, Director of the

Sacramento, Ca, nonprofit, 'Loaves & Fishes,' took the senior class project and used it to launch her own nonprofit known as, 'Mercy Pedlars.' Professor Kramer told Executive Administrator of CSUS Yvonne Harris, what happened. Yvonne Harris, a CSUS employee, directed Kathrine Cota, Executive Director of the Carlsen Center for Innovation and Entrepreneurship to walk me through a Pro-Se package and advised I "seek counsel to pursue further action." Nothing happened except a failed attempt to file further action against Sister Libby.

It is because nothing happened and no damage to Sister Libby's operations or reputation occurred that signaled to others that this behavior was okay, regardless of any existing duty of care to university students.

In this brief, after first stating the applicable standards of review, Plaintiff/Appellant shows that because a computer was used to commit this fraudulent acts to student entrepreneurs, and the follow-up fake funding offer by Haney who followed a similar pattern of events to obtain IP from unsuspecting entrepreneurs at 'Entrepreneurs Unleashed' without impunity, shows a pattern of corruption within the community exists now, and was used as a "deceptive device or contrivance." Plaintiff/Appellant then demonstrates that misrepresentations, including false statements, deceptive conduct, or half-truths that render statements that were made

misleading, are "deceptive" even if the defendant does not commit a breach when he makes the misrepresentation.

Violations in the duty of care resulted in a direct violation of my constitutional rights to my property; the IP and rewards and entitlements.

The cause of a snowball effect that led to public corruption (Kevin Nagle, Dale Carlsen, Brian Bedford, Seung Bach, Robert Nelsen, Mark Haney, Kim Box, Jyoti Das, Frank Bisek, Monique Brown, Brian Dombrowski, Haley Dillon-Meyers, Dan Mora, Barry Broome, Mark Friedman, Mitch Gardner, Edris Bemanian, Josh Wolfson of Parrable, Dam Mors of Gemini Legal and/or Gemini Legal, Cheryl Beninga, and Dave Mering – CEO of Mering/Carson, have all colluded to hide and/or deny access to information that would reveal the truth of ownership and rights of student entrepreneurs participating at a campus-led activity. The result is that they have all achieved higher earnings from upward mobility and professional acclaim from the misappropriated ownership of student IP obtained fraudulently to take credit for my "new gold standard" and call themselves, "The Anchor University" without regards to my rights, my civil rights to my property, my rights as an enrolled student at a University-led event, and the unethically shameful negligence that allowed the "largest

cash donor" to take control of all our work; our future earnings depending on it.

How could they come together to exploit a homeless college student, or any student, for their IP, and who was graduating the following Summer of 2019 with a bachelor's in business administration; an honorary Honor Student; and the top of my class in business development since performing consulting work to pay my way through college. Sacramento is so corrupt with the Carlsen name now, I cannot get employed for the last two years that I've been applying. (see: Donnely v. Southern Pacific Company, 18 Cal.2d 863 118 P.2d 353 (1942); Bud v. Nixen, 6 Cal.3d 195, 200, 98 Cal.Rptr. 849 (1971); Government Code Section 810 et seq.; Government Code Section 820; Hoff v. Unified School District, 19 Cal.4th 925, 932, 80 Cal.Rptr.2d 811, 968 P.2d 522 (1998); Thomas v. City of Richmond, 9 Cal.4th 1154, 1157, 40 Cal.Rptr.2d 442,892 P.2d 1185 (1995); Government Code Section 995.2; Tort Claims Public Record-Poway Unified School District v. Superior Court, 62 Cal.App.4th 1496, 49 Cal.Rptr.3d 519 (1998); 42 Cal.4th 730, 68 Cal.Rptr.3d 295 (2007); Government Code Section 945.4; Government Code Section 911.6 is added because the claim deficiencies had to be properly addressed; cured to support this claim for damages and injury.

Yes, we (students) expected to be honored for their work learned from college course studies and their own research. The many articles and guest audience members and passers-by were proud of my work, I felt proud.

What Carlsen did was so hurtful, I am lucky I came through without completely losing my mind and thank God for organic living because god made weed and not booze or drugs to alleviate the stressors that Carlsen's self-dealing activities created. The students ultimately feel the pinch of that insincerity from the CSUS platforms boasting about diversity and inclusion and other ideas of mine. If it is fake, it feels fake, and I did not lose my drive to be a part of 'the solution' so kept building. 'Make Your Campus Matter' was built based on the lack of resources at CSU Sacramento. See: Peretti v. Montana, 464 F.Supp. 784, 786 (D. Mont. 1979)(analyzing duties between colleges and students under rubric of contract law, and noting that "the general nature and terms of the agreement are usually implied, with specific terms to be found in the university bulletin and other publications; custom and usages can also become specific terms of implication"); (see: Generally Melissa Astala, Wronged by a Professor? Breach of fiduciary duty as a remedy in intellectual property cases, 3 Houston Bus. & Tax I.,J.

31 (2003); Rovert P Schuwerk, The Law Professor as fiduciary, What duties do we owe to our students, 45 S. Tex. I., Rev. 753 (2004);

The acts of negligence and self-dealing through fraud built the Carlsen brand to beyond taking money from Foster Kids to get ahead. Why would entitled Foster Kids need a 'ticket to dream' foundation when someone taking care of them as youths could have simply got them signed up for that entitlement? And Mark Haney was able to stop riding the proverbial coat-tails of successful launches that sought his assistance for funding through the "Allegiant giving" firm in Rocklin, Ca, where the 'Entrepreneurs Unleashed' event was held. Kathrine Bardis of Bardis Homes can vouch for the fact that we discussed, with Monique Brown and Garrett Marchiano, the offer for funding application that I accepted from them, and where Monique responded, "I'll call you in two weeks." I'm still waiting for that call, meanwhile, they closed up shop and rebranded, with all that IP that was uploaded for entrepreneurs seeking funding and whom had also applied through the same registration platform that Carlsen had; uploading your IP because the application was not enough information for their offer of funding. We all complied, but nobody at the event was actually receiving any of that funding. Haney simply used a similar tactic that Carlsen had for self-dealing and illegal methodology for obtaining valuable IP from

unsuspecting entrepreneurs who trusted their information is safe and not being misused.

## I. Standards of review for preliminary injunctions against future violations and for prejudgment asset freezes.

This court reviews a district court's decision to grant or deny a preliminary injunction for abuse of discretion.

A district court's decision should be upheld unless if applies legal standards incorrectly or relies upon clearly erroneous findings of fact. Plaintiff has provided the CSUS' own official correspondence and University policies for the R&D stages of student IP, to collaborate claims for damages and liability, and thus applies legal standards supporting all claims.

A. **An injunction against future violations**. A preliminary injunction against a violation of the civil and federal laws is appropriate if the Plaintiff/Appellant makes a substantial showing of likelihood of success to a current violation and risk of repetition. (See: The patents and Designs Act, Cap 90:03 to support the first and true inventor; The Trademarks Act Cap 90:01 to support the true and first inventor as owners of any trademarks based on their IP creations' Gadallah, 2010; Educational Act of 1972,

WIPO, 2008; Groves, 1997; Colston, 1999; Brown Univ., 809 F.Supp. 978, 1001 (D.R.I. 1992); J.P. Carlsbad Unified School District 232, Cal.App.4th 323 (2014); Section 1 of the 14th Amendment - personal property taken; Cleburne v. Cleburne Living Center, Inc. 473 U.S.432, 440 (1985)); Title IX because Carlsen used his influence to get teammate Adrian Pinion a Web Analyst job for the Dept. of Health Care Services (with a fake resume that said he was the Digital Marketing Manager for Sacramento City College while enrolled as an undergrad, and does not have the required 4 year degree since he is currently enrolled as an undergrad at CSU Sacramento.

Pinion's app was paid for by Carlsen. The framework was done by Rich Foreman, as well as the mobile app to get it onto Google Play for sale. Then he got Nishay Gordon a job but left me without a job or rights to my property.

Self-serving people represent the Carlsen Center and they took full advantage of us because it was our first exposure to real-world business activities. However, provisions in the City of Boerne v. Flores, 521 U.S. 507, 517(1997) because our rights in the future for personal and professional growth were violated. Unlike a private litigant, a special relationship exists between university students and the university.

See: McAdams v. Mass. Mut. Life Ins. Co., 391 F.3d 287, 303 (1st Cir. 2004) for the high magnitude of duty and dedication and time and performance was required when we registered for the pitch sessions, however, Carlsen took my teammates to launch, and not me, which is unfair treatment and/or bias based on race, sex, and greed. (see: Vikel Investors Pacific, Inc. v. Hampden, Ltd., 946 P.2d 589, 596-597 (Colo.App. 1997); see citings in Bailey v. Allstate Ins. Co., 844 P.2d 1336, 1339 (Colo. App. 1992); Civ.Code.Section 338 provides a three year statute to deceipt and students did rely on representation as a substantial factor of injury to student-beneficiaries due to misrepresentation and fraud.

**B. Asset freeze (Mareva Injunction).** In explaining why an asset freeze requires a lesser showing of likelihood of success than an injunction against future violations, this Court noted that "the degree to which the Plaintiff/Appellant and student entrepreneur under protections and provisions of the special relationship clause at a university must show likelihood of success will be reduced where the interim relief sought is not especially erroneous. (see: Chou v. University of Chicago No. 00-1317 (Fed.Cir.July 3, 2001)); Fowler v. United States Section 563 U.S. 668 (2011); Curtello v. The University of the West Indies, 2015; and 18. U.S.C. Section 1512 (a)(1)(C); and the Uniform Asset-

Freeezing Orders Act, because someone assisted in the prevention of communicating to others that a possible federal offense had been committed.

A student's freedom to innovate is at stake here, as is the student's right to copyright and patent laws in favor of protecting their coursework intellectual property (IP) from misuse by others (see: Gadallah, Y. 2010; Groves, 1997; World Trade Organization TRIPS Agreement); and reasonable reliance (see: Guido v. Koopman (1991) 1 Cal.App.4th 837, 843); and substantial factor of loss of IP (see: Engalla v. Permanente Medical Group, Inc. (1997) 15 Cal.4th 951, 976-77; internal citations omitted; actual reliance existed (see: Grey v. Don Miller & Associates, Inc. (1984) 35.3d 498, 503); not sole cause of reliance on university duty of care in activities (Sangster v. Paetkau (1998) 68 Cal.App.4th 151, 170).

Students are entitled to protection of intellectual property coursework because of the integrity of original authorship, the rights to ownership and use of that work, as well as demonstrating to others as we did in the pitch sessions to Carlsen select group of colluders (alleged), for funding and/or licensing agreements of the CSUS INVENTOR SHARE POLICIES of the University which defines royalties to be "35% of net income as defined under current policy," generally pooling of IP is 50% of net income, and

research sharing is 15% for each. That sucks when I did not get my rightfully earned cut from being the author and rightful owner of the IP that brought the CSUS campus to become the 'Anchor University.'

Facts are that Dale Carlsen and most of the Advisory Board members and Defendants received increased salaries, better employment opportunities and positions of high executive status, and Honorary degrees after they put my IP into self-dealing opportunistic fraud for themselves, while I'm having a hard time getting someone to hire me because of the public corruption that occurred as a direct result of breach.

Another result of the injustices, any discussion of the level of performance and returns on investment that I created is 'taboo' so that talking to hiring mangers in Sacramento could be a barrier to employment (see: American Inventors Protection Act enacted on November 29, 1999, (P.L. 106-113); AKA: Summary of H.R. 1907-106[th] Congress (1999-2000); American Inventors Protection Act of 1999; Colston, 1999; The Patents and Designs Act. Cap 90:03 Section 21, asserts a term of 16 years ownership rightfully belongs to original authors like myself, and rights to my research, IP, and designs thereof, from college and University studies. Plaintiff also seeks additional remedy for this through university policy involving use of intellectual property it uses and provides royalty stipends for, in the mistake

in recording and ownership rights to my property from the fraud, coercion, negligence, infliction of emotional duress, slander, and misuse of my IP without legal rights to do it from sole permission from myself to use it, and written in legal format that meet legal requirements for contractual agreement and 'meeting-of-the-minds' to use any part of my IP.

Mareva injunction orders are interlocutory orders and are granted to restrain all listed defendants in this first amended complaint from dissipating their assets. The viability of is subject to the opinion by the Supreme Court of the United States in Groupo Mexicano de Dessarolo v. Alliance Bond Fund, Inc., 527 U.S.308 (1999) because Plaintiff/Appellant and other CSUS had been suffering extreme financial debt and a serious financial setback and began to systematically infringe on student IP to pay other obligations. These assets are in the form of the rewards of ownership and rights to IP created by students which Carlsen has misinformed the public, was his work, and consequently, has rewarded himself and his colluding colleagues for that infringement and the rights to ownership.

An asset freeze is intended to facilitate enforcement of any eventual money judgement by assuring that the funds in the amount necessary to carry out the purpose of the act – will be available to satisfy the judgement and outcome in this complaint for damages, and by assuring that any funds

that may become due can be collected, and it does not place any defendant at risk of contempt for subsequent violations of the law.

## III. CARLSEN AND HANEY EMPLOYED SIMILAR TACTICS AT 'ENTREPRENEURS UNLEASED' TO OBTAIN IP FROM UNSUSPECTING ENTREPRENEURS HE OFFERED FUNDING APPLICATIONS TO IN AN EMAIL;

Inadvertently employing a deceptive device or contrivance with a computer and within the meaning of deception to satisfy his own personal advancement and financial gains.

Given the expansive working of the Rule, the pivotal issue in this case is whether Haney and Carlsen's conduct constituted a deceptive device or contrivance within the meaning of the statute See: Educational Act of 1972; Mattews v. Eldridge, 424 U.S. 319, 334 (1976) (quoting Cafeteria & Restaurant Workers v. McElroy, 367 U.S. 886, 895 (1961)); and Connecticut v. Doehr, 501 U.S. 1 (1991); the U.S. Constitution in terms of personal property rights, and the special relationship clause a university has between its student body; the Asset Freezing Orders Act; and the Uniform Foreign Country Money Judgement Recognition Act (UFCMJRA).

### a. Any deceptive device or contrivance is a broad reaching phrase that covers all schemes to mislead, or cause to believe the false, such as by trick, falsification, concealment, or cheating.

"In interpreting statutory texts courts use the ordinary meaning of terms unless context requires a different result." Gonzales v. Carhart, 127 S. Ct. 1610, 1630 (2007); Hochfelder, 425 U.S. at 198 ("commonly accepted meaning"); and Amoco Production Co. v. Southern Ute Indian Tribe, 526 U.S. 865, 874 (1999); Austin v. United States, 509 U.S. 602, 614 n.7 (1993); and Ali v. Federal Bureau of Prisons, 128 S. Ct. 831, 835-36 (2008), quoting United States v. Gonzalez, 520 U.S. 1, 5 (1997), quoting Webster's Third New International Dictionary 97 (1976) to imply that the word "any" is obviously meant to be inclusive.

For any ordinary meaning of "deceptive device or contrivance" we turn to Webster's International Dictionary (2nd ed. 1934), the same dictionary used by the Supreme Court to define the key terms in these case law terms and statutes. See: 425 U.S. at 199 nn. 20, 21 ("device," "contrivance," and "manipulative"); see also, In re Parmalat Securities Litigation, 376 F.Supp.2d 472, 502 (S.D.N.Y. 2005)("deceptive").

These terms have broad, overlapping definitions: "deceptive" describes any declaration, artifice or practice having the power to mislead, to cause to believe the false, or to disbelieve the truth, as by falsification, concealment, or cheating; an attempt to lead into error; a trick or a fraud.

"Device" and "contrivance" refer to all sorts of schemes to deceive (see: 25 U.S. at 199 n. 20 (quoting Webster's International Dictionary 580, 713 (2d ed. 1934).

**2 Nelsen, Haney, Carlsen, Bisek, and Das's conduct by not keeping students safe from harm or injury through participating with the Carlsen Center agreement for the "experiential Elevate Boot Camp" was a "deceptive device or contrivance" and deemed fraudulent.**

Yet when Bedford and Bach decided to join in on the use of the ideas of my pitch sessions to them, it became quite apparent that they intended to cause injury to student entrepreneurs, it became collusion and public corruption. I tried to file my first complaint about that outcome of events that unfolded. Plaintiffs point out the Supreme Court decision that observes that cases where "concerns of legal effect of the [defendant's] silence" "may constitute a manipulative or deceptive device." And where silence may be

fraudulent when failure to speak breaches a duty to disclose. (see: 445 U.S. at 226).

Applying common law principles, "the officers, directors" "have an affirmative duty to disclose material information which has been traditionally imposed on corporate 'insiders,' particularly officers, directors, or controlling stockholders" like Carlsen and the advisors.

The ultimate target of the deception is Carlsen and the members of his advisory board have ownership of that IP and information, and the fact that deception is communicated through correspondence involving a computer system is of no legal consequence. (see: Thrifty-Tel, Inc. v. Bezenek, 46 Cal.App.4th 1559, 1567-68 (1996)(affirming fraud judgment based on unauthorized access to long distance codes, noting that while "no human by an agent may be imputed to the principal" and "[w]e view Thrifty-Tel's computerized network as an agent or legal equivalent"); United States v. Flowerday, 28 M.J. 705, 707-09 IA.F.C.M.R 1989); Barker, 2011; Pilz, 2012.

Furthermore; Weeks & Haglund, supra n. 6; Compare Chou, 254 F.3d at 1347 with U. of W., Va. V. VanVoorhies, 278 F.3d 1288 (Fed.Cir.2002; Infra. Part III .C; Infra. Part III .A; Infra. Part III .B; J.P. v Carlsbad Unified

School District, includes liability clause provision; and consumer lemon law may apply, as well.

Proposed Joinder of Parties Fed.Rule.Civ.Proc. Rule 20; 445 U.S. at 227-28 (emphasis added).

## **PRAYER AND REMEDY**

Student's registration for and acceptance into any offer by the Carlsen Center results in an implied agreement offered and accepted. Students are allowed to make the election of a contract agreement and acceptance of performance occurred; same as passing the requirements of a course of study (see: Campbell v. Birch (1942) 19 Cal.2d 778, 791)).

Plaintiff/Appellant seeks damages in fraud to restore Plaintiff/Appellant to the financial position which would have been enjoyed by the Plaintiff/Appellant had the fraud not occurred ☹.

The use of the 'Benefit-of-the-Bargain' for measuring damages due to Plaintiff/Appellant is satisfying that expectancy of interest of the defrauded IP, and therefore should be calculated from the date of discovery from April of 2019 and attempted to file Case No. 2:19-cv-00366-KJM-AC for this breach (see: Stout, 22 Cal.3d at p.725.);

Damages under Civil Code Section 3343 (see: Salahutdin, supra, 24 Cal.App.4[th] at p.565) where just remedy is rightfully applied to Plaintiff/Appellant through the 'Benefit-of-the-Bargain' measure to benefit me, rightful author and owner, in terms of reliance and damages. Plaintiff/Appellant seeks justice through direction of current laws and statutes and/or provisions protecting student intellectual property.

Justice for the injustices I endured by participating in the premier event held by University and the Carlsen Center of Innovation and Entrepreneurship in June of 2018 are sought by Plaintiff/Appellant, based on violations in Duty of Care and fraud.

Plaintiff/Appellant seeks the rightful royalties and provisions for the intellectual property deemed for use by the University officials using 'Make Your Campus Matter' and the professional acclaim that comes with it so that I can find gainful employment and receive needed credibility to get to the next level of success from my degree.

Fraud by Carlsen, et al., resulted in gross negligence and injury to Plaintiff/Appellant who was fraudulently relieved of ownership of my IP learned through research and studies in conferring a bachelor's degree in

Business Administration at CSU Sacramento. I graduated in Summer of 2019.

Monetary relief based on fairness of compensation for fraudulent usage of my IP since overstepping occurred and led to greed and public corruption, benefitting everyone involved with Carlsen (but the rightful owners), and whom were provided better economic opportunities while I received nothing but defamation, slander, cruel and unusual punishment, woe, worry, hunger, and insecurities from loss of economic prosperity I should have received from my IP involving economic development, engagement opportunities, and a thorough understanding of the consumer market, IP that met and exceeded goals of the CSUS University, and the competitive advantages thereof. Nothing the CSU content or Carlsen proposals, University correspondence, information from the Office of the President, Associated Students ASI, advertisers, and the CSUS University and the Trustee Secretariat minutes from the naming of the Carlsen center was anything even close to my IP existed until I was robbed of my IP that provides any and therefore, prayers and remedy include three times the value dating back to 2019, is due to Plaintiff/Appellant, and future royalties for that IP, along with the acclaim for authorship and announced to the public, is prayed for as remedy, as well.

## <u>CONCLUSION</u>

For the foregoing reasons, the Plaintiff/Appellant's plea for prayers and provisions of remedy from finding cause for an actionable liability claim and for a Joinder of Parties, a preliminary injunction and/or a permanent injunction, and permission for pre-judgement asset freeze should be allowed in this case.

Respectfully submitted,

Date: August 30th, 2021          Soraya Maria Rigor, Plaintiff/Appellant

In Forma Pauperis

## <u>CERTIFICATE OF COMPLIANCE</u>

## Pursuant to Fed.R.App.P.32(a)(7)(C)

I hereby certify that, pursuant to Fed.Rule.App. P.32(aP(7)(C), the

attached brief is proportionately spaced, and has an typeface of 14 points

(Ariel) or more, is 41 pages long and contains 7723 words for complaint,

proof of service and list of defendants, known agents and representatives

authorized to accept, and Table of Contents with FACTS.

Dated: August 30th, 2021

Soraya Maria Rigor, In Forma Pauperis
Plaintiff/Appellant
P.O. Box 661473
Sacramento, CA, 95866
408-212-1691

_____CERTIFICATE OF SERVICE _____

I certify that, on this day, I caused the original and sent out 24 copies of the foregoing brief and 24 copies of the Summons & service to (Agents) and/or all Defendants by U.S.P.S mail and/or electronic copy (FAX or EMAIL): c/o CSU Trustee Secretariat (Authorized Agent) and listed.......

- Frank Bisek               Robert Nelsen

- Dale Carlsen              Barry Broome

- Jyoti Das                 Dave Mering

- Monique Brown             Cheryl Beninga

- Mark Haney                Mark Friedman

- Edris Bemanian            Rich Foreman

- Mitch Gardner             Laura Good

- Brian Bedford             Kim Box

- Seung Bach                Dave Luccetti

- Haley Dillon-Meyers       Kevin Nagle

- Dam Mors                  Dan Mora

- Julian Vasquez            Mark of EZE Systems